DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: DOMINIKA TARCZYNSKA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2748
E-mail: dominika.tarczynska@usdoj.gov

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>       -v-<br><br>ALEXIS BAEZ, in his capacity as the administrator of the Estate of LUIS M. BAEZ NOYER,<br><br>                       Defendant. | 22 Civ. 9195<br><br>**COMPLAINT** |

Plaintiff the United States of America (the "United States"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, brings this civil action against Defendant Alexis Baez, in his capacity as administrator of the estate of Luis M. Baez Noyer, to collect unpaid federal penalty assessments and interest related to Mr. Baez Noyer's financial interests in foreign bank accounts, and to reduce those assessments and interest to judgment as provided by law. The United States alleges upon information and belief as follows:

1. In this lawsuit the United States seeks to collect the penalties that the Internal Revenue Service ("IRS") assessed against Mr. Baez Noyer for his failure to file timely file Reports of Foreign Bank and Financial Accounts, known as FBARs, disclosing his ownership interest in bank accounts in the Dominican Republic during tax years 2006 through 2016. Mr. Baez Noyer

is now deceased, and the United States brings this action against the administrator of his estate, his son, Alexis Baez.

## JURISDICTION AND VENUE

2. The United States brings this suit pursuant to 31 U.S.C. §§ 3711(g)(4)(C) and § 5321(b)(2), at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Commissioner of the IRS, a delegate of the Secretary of the Treasury of the United States.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, because it arises under a federal statute and the United States is the plaintiff.

4. Venue is proper in this District because it is "a judicial district in which any defendant resides" or "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1)-(2); *see also id.* § 1395(a). Mr. Baez Noyer's last-known address and the current address of his estate are located in Bronx County, within this District.

## STATUTORY AND REGULATORY BACKGROUND

5. The Secretary of the Treasury is authorized by law to require United States persons to report certain transactions with foreign financial agencies. 31 U.S.C. § 5314. Under this statute's implementing regulations, "[e]ach person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country," is required to report that interest to the IRS for each calendar year in which such relationship exists. 31 C.F.R. § 1010.350(a); 31 C.F.R. § 103.24 (effective until March 1, 2011).

6. To fulfill this requirement, a U.S. person is required file a Report of Foreign Bank and Financial Accounts, commonly known as an FBAR. In tax years 2006 through 2012, the required form was Treasury Form TD F 90-22.1, and beginning in tax year 2013, the required form was FinCEN Form 114. For tax years 2006 through 2015, the FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c). Beginning in tax year 2016, the due date for the FBAR changed from June 30 to April 15 of the year following the reported account ownership. *See* PL 114-41, § 2006(b)(11) (July 31, 2015).

7. A taxpayer's failure to file an FBAR can lead to the assessment of a civil monetary penalty in the amount of $10,000 for each non-willful violation, or the greater of $100,000 or half the balance in the undisclosed account for each willful violation. 31 U.S.C. § 5321(a)(5)(B) & (C).

8. Penalties assessed under 31 U.S.C. § 5321(a)(5)(B) are subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

9. Beginning in 2009, the IRS developed voluntary disclosure programs, including the Offshore Voluntary Disclosure Program ("OVDP") and the Streamlined Compliance Filing Procedures (the "Streamlined Procedure"), for taxpayers with undisclosed income from offshore financial accounts. These programs required accepted participants, among other things, to pay certain taxes, interest, and penalties, and generally eliminated their risk of criminal prosecution.

**FACTUAL BACKGROUND**

10. Mr. Baez Noyer was born in the Dominican Republic, and in the mid-1980s became a citizen of the United States.

11. During his lifetime, Mr. Baez Noyer owned a number of multifamily buildings in the Bronx. His operating model was to build up equity in the buildings, and then take out loans backed by mortgages on the buildings, and transfer the loan proceeds to bank accounts he owned in the Dominican Republic. There, he used the money to invest in stocks of banks and insurance companies.

12. Between 2006 and 2016, Mr. Baez Noyer owned at least eighteen bank accounts in the Dominican Republic. All of the accounts were in his own name and he had complete control over each. The aggregate balances in those accounts ranged from $810,840 in 2006 to $5,691,253 in 2015, as detailed in Tables 1 and 2 below.

**Table 1 - Aggregate Balances 2006-2011**

|   | Bank Name & Account #[1] | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|
| 1 | Ban Reservas **********560-2 | $3,485 | $41,979 | $15,855 | $1,247 | $6,987 | $3,388 |
| 2 | Banco Popular *****908-2 | $243,962 | $274,576 | $144,965 | $443,608 | $436,486 | $479,535 |
| 3 | Banco Popular *****2681 | $223,514 | $241,134 | $377,103 | $11,206 | - | - |
| 4 | Banco Popular *****8405 | $24,991 | $43,716 | $15,319 | $27,716 | $4,669 | $670 |
| 5 | Banco Popular *****3848 | - | - | - | - | - | - |
| 6 | Banco Popular *****5301 | - | - | - | - | - | $265,619 |
| 7 | Banco Popular *****6672 | - | - | - | - | - | $467,676 |
| 8 | Segruos Universal ****1194 | - | $8,110 | $93,248 | $140,127 | $136,534 | $131,837 |
| 9 | Term Deposit ****4264 | $10,606 | $10,495 | $9,909 | $9,695 | $9,455 | - |
| 10 | Term Deposit *****812-8 | - | - | - | - | - | - |
| 11 | Term Deposit *****5436 | - | - | - | - | - | - |
| 12 | Grupo Popular *0028 | $303,030 | $357,627 | $356,738 | $404,001 | $2,429,150 | $2,456,940 |

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a)(4), all but the last four digits of financial account numbers herein are redacted.

|    | Bank Name & Account #   |           |           |             |             |             |             |
|----|-------------------------|-----------|-----------|-------------|-------------|-------------|-------------|
| 13 | Grupo Popular *0123     | $1,252    | $1,759    | $1,740      | $1,856      | $11,363     | $11,504     |
| 14 | Grupo Popular *0027     | -         | -         | -           | -           | $1,101      | $1,115      |
| 15 | Grupo Popular *0207     | -         | -         | -           | -           | -           | -           |
| 16 | Grupo Popular *****1805 | -         | -         | -           | -           | -           | -           |
| 17 | Grupo Popular ****7772  | -         | -         | -           | -           | -           | -           |
| 18 | Grupo Popular *5790     | -         | -         | -           | -           | -           | -           |
|    | **Total**               | **$810,840** | **$979,396** | **$1,014,877** | **$1,039,456** | **$3,035,745** | **$3,818,284** |

## Table 2 - Aggregate Balances 2012-2016

|    | Bank Name & Account #        | 2012       | 2013      | 2014        | 2015      | 2016      |
|----|------------------------------|------------|-----------|-------------|-----------|-----------|
| 1  | Ban Reservas **********560-2 | $3,566     | $5,299    | $12,708     | $4,405    | $200,000  |
| 2  | Banco Popular *****908-2     | $244,304   | $220,362  | $87,788     | -         | -         |
| 3  | Banco Popular *****2681      | -          | -         | -           | -         | -         |
| 4  | Banco Popular *****8405      | $670       | $669      | $608        | -         | -         |
| 5  | Banco Popular *****3848      | -          | $557,751  | $403,822    | -         | -         |
| 6  | Banco Popular *****5301      | -          | -         | -           | -         | -         |
| 7  | Banco Popular *****6672      | $48        | -         | -           | -         | -         |
| 8  | Segruos Universal ***1194    | $132,491   | $214,349  | $274,358    | $266,683  | $103,207  |
| 9  | Term Deposit ****4264        | -          | -         | -           | -         | -         |
| 10 | Term Deposit *****812-8      | $203,766   | -         | -           | -         | -         |
| 11 | Term Deposit *****5436       | -          | $243      | -           | -         | -         |
| 12 | Grupo Popular *0028          | $2,350,943 | $738,570  | $2,379,334  | $470,476  | -         |
| 13 | Grupo Popular *0123          | $11,007    | $3,717    | $2,436      | $2,368    | -         |
| 14 | Grupo Popular *0027          | $1,282     | $1,205    | $204        | -         | -         |
| 15 | Grupo Popular *0207          | -          | $16,030   | $16,644     | $16,178   | -         |
| 16 | Grupo Popular *****1805      | -          | -         | -           | $25,000   | $25,000   |

5

| | | | | | | |
|---|---|---|---|---|---|---|
| 17 | Grupo Popular ****7772 | - | - | - | $25,000 | $25,000 |
| 18 | Grupo Popular *5790 | - | - | - | $4,881,143 | $524,438 |
| | Total | $2,948,077 | $1,758,195 | $3,177,902 | $5,691,253 | $877,645 |

13.     IRS Form 1040, Schedule B, Part III, titled Foreign Accounts, asks taxpayers to disclose whether at any time during the tax year, they had an interest in or signature authority over a financial account (such as a bank account, securities, account or other financial account) located in a foreign country and to name the country or countries in which such accounts are located. The form further directs taxpayers answering "yes" to file an FBAR and follow the form's instructions for "filing requirements and exceptions to those requirements." The FBAR form, in turn, instructs that it should be "used to report a financial interest in, signatory authority or other authority over one or more financial accounts in foreign countries . . . . No report is required if the aggregate value of the accounts did not exceed $10,000."

14.     For tax year 2006, the IRS no longer has a copy of Mr. Baez Noyer's tax return, and thus does not know whether it included a Schedule B or whether it was properly completed. For tax year 2007, Mr. Baez Noyer's tax return attached a blank Schedule B. For tax years 2008 through 2012, Mr. Baez Noyer's tax returns attached Schedules B that answered "No" on Line 7a in response to the question of whether Mr. Baez Noyer had an interest in a foreign bank account. Mr. Baez Noyer did not timely file FBARs for any of these tax years.

15.     For tax years 2013 through 2016, Mr. Baez Noyer's returns included Schedules B indicating that he had a foreign bank account or accounts in the Dominican Republic, but he did not timely file FBARs providing the account information for these years.

16.     Mr. Baez Noyer was required to filed FBARs for tax years 2006 through 2016 because the combined balance of his foreign bank accounts exceeded $10,000 in each of those years.

6

17. In the summer of 2014, the Dominican Republic entered into a Foreign Account Tax Compliance Act ("FATCA") Intergovernmental Agreement with the United States. On December 3, 2014, Mr. Baez Noyer was accepted into the 2014 OVDP. In his OVDP application, Baez Noyer cited that he learned of the program while attending a business seminar.

18. As part of Mr. Baez Noyer's participation in this program, his accountant filed belated FBARs on his behalf for tax years 2006 through 2013: on April 20, 2015, Mr. Baez Noyer submitted an FBAR for tax year 2010 in paper; and on June 6, 2016, Mr. Baez Noyer submitted FBARs for tax years 2006-09 and 2011-13 in paper. These FBARs were also submitted to the IRS electronically on November 19, 2018. However, these untimely FBARs significantly underreported the balances in Mr. Baez Noyer's foreign accounts.

19. Mr. Baez Noyer has never submitted FBARs for tax years 2014 through 2016.

20. Mr. Baez Noyer died on July 7, 2017. He was survived by his daughter Alina S. Baez, and his son, Alexis M. Baez. His assets were distributed according to New York State's intestacy rules and procedures. The Bronx County Surrogate's Court of issued letters of administration of February 9, 2018, and a Certificate of Appointment of Administration on June 18, 2018, which named Alexis Baez as administrator of the estate.

21. On August 23, 2016, Mr. Baez Noyer signed a consent extending the time until December 31, 2018, for the United States to assess FBAR penalties against him for tax years 2006-11. On August 9, 2018, Alexis Baez, in his capacity as estate administrator, and the estate's accountant, as the estate's authorized power of attorney, consented to extend the statute of limitations until December 31, 2019, for the United States to assess FBAR penalties against Mr. Baez Noyer for tax years 2006-11. On July 28, 2019, the estate's accountant consented to extend

the statute of limitations until December 31, 2020, for the United States to assess FBAR penalties against Mr. Baez Noyer for tax years 2006-13.

22. On September 3, 2020, the IRS commenced an examination of Mr. Baez Noyer for tax years 2006-16. During this examination, the IRS discovered that Mr. Baez Noyer had significantly understated his tax liabilities attributable or related to the foreign accounts, such as by not reporting income from dividends, interest, and property rentals, as reflected in the table below.

**Table 3 – Annual Tax Deficiency[2]**

| Tax Year | Tax Deficiency |
|---|---|
| 2006 | $97,250 |
| 2007 | $126,829 |
| 2008 | $129,833 |
| 2009 | $142,371 |
| 2010 | $166,570 |
| 2011 | $95,369 |
| 2012 | $110,294 |
| 2013 | $109,003 |
| **TOTAL** | **$977,519** |

23. On October 28, 2020, the IRS timely assessed FBAR penalties against Mr. Baez Noyer for tax years 2006-13. On December 11, 2020, the IRS timely assessed FBAR penalties

---

[2] The IRS assessed penalties for tax deficiencies in the 2010-2013 tax years, no penalties were assessed for the 2006-2009 tax years because at the time that the IRS completed its examination, the statute of limitations for those years had already expired. The 2010-2013 penalties are currently the subject of the IRS's administrative process and are not the subject of this lawsuit.

against Mr. Baez Noyer for tax years 2014-16. These penalties were calculated based on a non-willful penalty of $10,000 per undisclosed bank account for each year.

24. These penalty assessments survive Mr. Baez Noyer's death and can be asserted against his estate. The assessed penalties for each tax year are reflected in the table below.

**Table 4 – Assessed FBAR Penalties**

| Tax Year | Total FBAR Penalty Amount |
|---|---|
| 2006 | $70,000 |
| 2007 | $80,000 |
| 2008 | $80,000 |
| 2009 | $80,000 |
| 2010 | $80,000 |
| 2011 | $90,000 |
| 2012 | $90,000 |
| 2013 | $100,000 |
| 2014 | $90,000 |
| 2015 | $80,000 |
| 2016 | $50,000 |
| TOTAL | **$890,000** |

25. On November 5, 2020, the IRS sent a Letter 3708 to Mr. Baez Noyer's estate regarding tax years 2006-13, which informed the estate that the penalties for these years had been assessed on October 28, 2020, and that payment was required within 30 days of the assessment, and detailed the estate's right to seek administrative review of the penalty with the IRS Office of Appeals. On February 4, 2021, the IRS sent another Letter 3708 to Mr. Baez Noyer's estate for

tax years 2014-16. This letter was similar to the first letter, but indicated that the penalties for these tax years had been assessed on December 11, 2020.

26. In response to the Letters 3708, on March 1, 2021, an attorney representing Mr. Baez Noyer's estate filed two protests with the IRS, which requested Appeals hearings for the two assessments. In a memorandum dated March 11, 2022, the IRS Office of Appeals sustained the penalties from both assessments in full.

27. As of October 24, 2022, no portion of the FBAR penalties assessed against Mr. Baez Noyer has been paid.

28. Since the date on which the IRS assessed the FBAR penalties at issue, interest and additional penalties have accrued, and continue to accrue, pursuant to 31 U.S.C. § 3717(a)-(e).

## CLAIM FOR RELIEF
### Judgment for Civil Penalties, 31 U.S.C. § 5321(a)(5)/ Reduce Federal Tax Assessments to Judgment

29. By this action, the United States seeks to collect the FBAR penalties that the IRS assessed against Mr. Baez Noyer for tax years 2006 through 2016, plus interest and additional penalties that continue to accrue as provided by law.

30. Since the IRS assessed the FBAR penalties, interest and additional penalties have accrued, and continue to accrue, pursuant to 31 U.S.C. § 3713(a)-(e), and remain unpaid. As of October 24, 2022, Mr. Baez Noyer's estate owed penalties and interest totaling $1,021,892.

31. The United States may bring suit to recover FBAR penalties at any time before the end of the two-year period beginning on the date the penalties were assessed. 31 U.S.C. § 5321(b)(2)(A). This action is brought within the two-year limitations period.

32. The United States is entitled to a judgment against Defendant Alexis Baez, in his capacity as administrator of the estate of Luis M. Baez Noyer, in the amount of $1,021,892.05, plus additional accruing interest and penalties as provided by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff the United States of America respectfully requests that the Court enter judgment:

(a) awarding the United States the amount of the FBAR penalties assessed against Mr. Baez Noyer, including interest and penalties as of October 24, 2022, totaling $1,021,892, plus additional interest and penalties as allowed by law from that date to the date of payment; and

(b) granting the United States its costs incurred in connection with this action, along with such further relief as the Court may deem just and proper.

Dated:   October 27, 2022
         New York, New York

                                    DOMINIKA TARCZYNSKA
                                    United States Attorney for the
                                    Southern District of New York

                            By:     /s/ Dominika Tarczynska
                                    DOMINIKA TARCZYNSKA
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Tel.: (212) 637-2748
                                    E-mail dominika.tarczynska@usdoj.gov